No. 37,643

ALICE VERGO, *Plaintiff*, v. CITY OF MULBERRY, *Appellee*.

(207 P. 2d 370)

Opinion filed June 11, 1949.

*Sylvan Bruner, Pete Farabi* and *Morris Matuska,* all of Pittsburg, were on the briefs for the appellant.

*Carl Pingry* and *J. P. Gendusa,* both of Pittsburg, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action against a city for money. Defendant's motion to·quash the service of summons upon it was sustained. Plaintiff has appealed.

The praecipe requested the clerk to issue a summons for defendant, city of Mulberry, a municipal corporation, for service upon Leonard Dugan, mayor. The summons was served by the deputy sheriff, leaving it with the mayor's wife, at his residence during his absence from home. The city appeared specially and moved to quash the service. On the hearing of this motion the affidavit of the mayor that on the evening in question he attended a club meeting in the city, made no attempt to conceal himeslf and that the summons in the action was not handed to him and the first time he saw it was when he returned from the club. There was an affidavit by the city clerk to the same effect. The motion to quash the service was sustained. Hence this appeal.

Defendant relies on G. S. 1935, 60-2517, which provides, as follows:

"All and every process and notice whatever, affecting any city, shall be served upon the mayor, or, in his absence, upon the clerk of such city."

The city argues that the correct meaning to be given this language is that the service spoken of is service upon the mayor personally.

In other words, there cannot be what is termed "residence service" upon a mayor or city clerk when a city is the defendant.

Plaintiff relies first upon G. S. 1935, 60-2507, which provides, as follows:

"The service shall be by delivering a copy of the summons to the defendant personally, or by leaving one at his usual place of residence, at any time before the return day."

Plaintiff cites opinions where we have held that residence service upon an individual was personal service under the terms of the quoted statute. Those opinions are not in point here, however, because no individual was a defendant here. A city has no place of residence.

Plaintiff next points out G. S. 1935, 60-2521. That section provides, as follows:

"In all cases where service of any process cannot be had upon the person designated by such company or corporation personally, service may be made by leaving a copy of such process at the usual place of residence of such person."

That would seem to provide for residence service upon agents in some cases. It was section 73 of chapter 182 of the Laws of 1909. This section must be considered in connection with the two preceding sections of chapter 182. Section 71, now G. S. 1935, 60-2519, provides for the appointment by certain public utility companies of an agent upon whom service could be made in each county. Section 72, now G. S. 1935, 60-2520, provides for service upon certain named employees when no service agent had been named in the county. Clearly G. S. 1935, 60-2521, provides for residence service upon agents for companies and corporations of the type named in G. S. 1935, 60-2519.

A city is not such a company or corporation. The trouble about applying the provisions of the foregoing sections here is the section already quoted relating to service upon cities.

G. S. 1935, 60-2517, provides:

"All and every process and notice whatever, affecting any city, shall be served upon the mayor, or, in his absence, upon the clerk of such city."

G. S. 1935, 60-2519, 60-2520 and 60-2521 were all sections of chapter 182 of the Laws of 1909. The first section of this chapter provided that it should be known as the code of civil procedure. It pretty thoroughly covered the field. It did not, however, provide for service of summons where the defendant was a city. This subject was given legislative consideration in section 12 of chapter

60 of the Laws of 1871. That chapter related to cities of the third class and was a revision of chapter 26 of the Laws of 1869. Chapter 26 had not dealt with service of summons upon cities. Section 12 of chapter 60 of the Laws of 1871 provided, as follows:

"The corporate name of each city governed by this act shall be, 'The City of ....................................,' and all and every process and notice whatever affecting any such city shall be served upon the mayor, and in his absence upon the president of the council, and in the absence of both upon the city clerk; and in the absence of these officers from the city, then by leaving a certified copy at the office of said clerk."

The conclusion seems inescapable that the service contemplated by this section upon the mayor or president of the council was personal service upon that officer by handing him a copy of the summons.

In chapter 37 of the Laws of 1881 we find the legislature dealing with the question of a service upon a city of the first class. Section 6 of that chapter provided as follows:

"All and every process whatever affecting any such city shall be served upon the mayor, or, in his absence, upon the president of the council, or, in the absence of both from the city, then upon the city clerk."

This same section was reënacted as section 6 of chapter 122 of the Laws of 1903.

Chapter 114 of the Laws of 1907 dealt also with the first-class cities. Section 5 of that chapter provided as follows:

"All and any process whatever affecting any such city shall be served upon the mayor, or, in his absence from the city, then upon the city clerk."

During all these years section 12 of the Laws of 1871 had been in effect as far as third-class cities were concerned. Furthermore all the sections to which reference has been made were in chapters that had to do with cities either first class or third class.

The Revised Statutes for 1923 were a general revision of all our statutory law. R. S. 1923, 60-2517, provides, as follows:

"All and every process and notice whatever, affecting any city, shall be served upon the mayor, or, in his absence, upon the clerk of such city."

That section was carried in the Revised Statutes for 1923 in the chapter providing for a code of civil procedure.

It will be noted that by dropping the word "such" the section was made to apply to cities of all classes and the qualifying words "from the city" were dropped after the word "absence" as it appeared in all preceding sections since 1871. The conclusion is inescapable, however, that the service intended was personal service

by handing a copy of the summons to the officer named. Had the intention been to provide for residence service on the mayor then there would have been no reason for the provision for alternative service. The section would simply have provided for service upon the mayor or by leaving a copy of the summons at his residence or at the residence of the city clerk, as the case might be.

The well-established rule is that where a statute provides a particular method of service, the statute must be followed. (See 14A C. J. 802, 804; also 44 C. J. 1476.) An analogous situation was considered in *Patterson v. Montgomery County Comm'rs,* 145 Kan. 559, 66 P. 2d 400. That was an action to enjoin the levy of a tax in a school district to pay a judgment. The judgment had been taken in justice court against the school district after service of summons upon "Johnson, Treas." There was no showing that the director of the school district was absent. We pointed out that service was had pursuant to G. S. 1935, 61-205, which provides, as follows:

"A summons against a corporation may be served upon the president, mayor, chairman of the board of directors or trustees, or other chief officer; or, if its chief officer is not found in the county, upon its cashier, secretary, treasurer, clerk or managing agent; or, if none of the aforesaid officers can be found, by a copy left at the office or usual place of business of such corporation, with the person having charge thereof."

And that G. S. 1935, 72-1004, provides that the director shall be the presiding officer at all district meetings and further provides, in part:

"He shall appear for and in behalf of the district in all suits brought by or against the district. . . ."

In considering a judgment based on such service we examined the authorities generally and held:

"In a suit against a school district before a justice of the peace, where it appeared that service of sumomns as shown by the return of the constable was upon 'Johnson, Treas.,' and where the return of the constable failed to show that the director of the school district was not in the county, *held,* such service was insufficient, and the justice court was without jurisdiction to render judgment against the school district." (Syl. ¶ 1.)

That and other authorities cited therein are decisive of this question.

We have concluded that the trial court did not err in sustaining the motion of the defendant city to quash the service.

The judgment of the district court is affirmed.

THIELE, J., concurs in the result.